CONNIE KENDALL,

      Plaintiff,

                                     Case No. 3:16-cv-434

vs.

DEPARTMENT OF VETERANS AFFAIRS,      Magistrate Judge Michael J. Newman
                                           (Consent Case)

      Defendant.

---

## ORDER AND ENTRY: (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND (2) TERMINATING THIS CASE ON THE COURT'S DOCKET

---

      This civil consent case is before the Court on the motion for summary judgment filed by Defendant, the United States Department of Veterans Affairs ("VA"). Doc. 22. Plaintiff, Connie Kendall, filed a memorandum in opposition to Defendant's motion (doc. 25) and, thereafter, Defendant filed a reply (doc. 28). The Court has carefully considered all of the foregoing, as well as all Rule 56 evidence submitted by the parties on summary judgment. Accordingly, Defendant's motion is ripe for decision.

## I.

      A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law.'" *Keeweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment -- rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Instead, the party opposing summary judgment has a shifting burden and "must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." *Id.* (citation omitted). Failure "to properly address another party's assertion of fact as required by Rule 56(c)" could result in the Court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Finally, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Buarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted). Instead, "[i]t is the attorneys, not the judges, who have interviewed the witnesses and handled the physical exhibits; it is the attorneys, not the judges, who have been present at the depositions; and it is the attorneys, not the judges, who have a professional and financial stake in case outcome." *Id.* at 406. In other words, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not." *Id.*

## II.

In support of their arguments on summary judgment, the parties here rely on the following: the deposition of Plaintiff and exhibits identified therein and attached thereto (doc. 19); the declaration of Richard Riddle, a licensed social worker who supervised Plaintiff, and a number of documents authenticated therein and appended thereto (doc. 20); and the declaration of Anita

Carmichael, Chief of Employee and Labor Relations at the Dayton Veterans Affairs Medical Center ("Dayton VA"), authenticating and appending thereto a number of documents in Plaintiff's VA employment file (doc. 21). The Court has carefully considered all of the foregoing Rule 56 evidence in the light most favorable to Plaintiff. *See* Fed. R. Civ. P. 56(c)(1)(A). Unless otherwise stated, the following are the undisputed facts of the case.

Plaintiff worked as a VA nurse for a number of years over two separate stints between 1986 and her retirement in April 2016. She first worked at the Dayton VA from 1986 until her resignation in 1989. Doc. 21 at PageID 411-12. In 2007, Plaintiff was hired as a nurse for the VA in Indianapolis. Doc. 19 at PageID 76-77. She subsequently transferred to the Dayton VA in 2009, where she worked as a clinical specialist -- specifically as a grade II nurse ("Nurse II") -- at the Springfield Community Based Outpatient Clinic ("CBOC") until her retirement. *Id.* at PageID 78, 186; *see also* doc. 1 at PageID 2. Richard Riddle served as Plaintiff's administrative supervisor from 2009 until November 30, 2015. Doc. 20 at PageID 401. Plaintiff had a separate clinical supervisor, Dr. Florence Coleman, who oversaw issues surrounding medical care and treatment. Doc. 19 at PageID 80-81.

Upon her transfer to the Dayton VA in 2009, Plaintiff worked at the Springfield CBOC five days a week, from 8:00 am to 4:30 pm. *Id.* at PageID 79. In 2010, Plaintiff was assigned to cover patients in the Lima CBOC two days a week. *Id.* In 2011, the VA accommodated Plaintiff's request to see Lima patients through telehealth -- a video conferencing interface -- in lieu of having to drive to Lima. *Id.* at PageID 81. On her telehealth days, Plaintiff reported to the Springfield CBOC and remotely treated patients in the Lima CBOC over a video connection. *Id.* Shortly thereafter, Plaintiff also agreed to see patients at the Richmond, Indiana CBOC via telehealth one day a week. *Id.* In 2013, Plaintiff volunteered to cover Middletown patients via telehealth one day a week. *Id.*

While Plaintiff received positive reviews each year from 2009 to 2014 -- including high satisfactory ratings -- those reviews did not translate into a promotion from Nurse II to Nurse III. Doc. 22 at PageID 706; doc. 25 at PageID 733. Specifically, in June 2014, Plaintiff received a high satisfactory review from Riddle. Doc. 21 at PageID 415-23. Upon issuance of that review, Plaintiff was automatically considered for a promotion to Nurse III, but the VA reviewing board determined that she did not meet the criteria required for the promotion. *Id*. at PageID 416.

On September 8, 2014, Plaintiff filed an EEO charge alleging the promotion denial was discriminatory based on her age (hereinafter referred to as the "September 2014 EEO charge"). *See* doc. 21 at PageID 415. Three days after filing that EEO charge, Plaintiff emailed Riddle to request a reduction in her workload because she was falling behind on her assignments. *Id*. at PageID 269. The next morning, Riddle responded to Plaintiff and informed her that he would start an inquiry based on her concerns and that, in the meantime, the current schedule would continue in order to ensure that the VA could meet all patient care needs. *Id*. Plaintiff acknowledges that fulfilling her request for a reduced workload would take months because of the adjustments to schedules that were required. *Id*. at PageID 100.

Between October 16 and December 12, 2014, Plaintiff used sick leave on ten occasions, for a total of 48 hours. Doc. 19 at PageID 272-73. Plaintiff does not dispute that she used sick leave to such an extent. Doc. 19 at PageID 107. Riddle found this pattern concerning because of the timing of the sick leave -- Plaintiff would allegedly schedule leave and then, at the conclusion of the scheduled leave, she would call off sick for another day -- and because "[t]here were a lot of veteran complaints about cancellation of appointments, lateness of [Plaintiff] being there[.]" Doc. 21 at PageID 566-67. Plaintiff concedes that a supervisor would justifiably be concerned with the amount of sick leave taken during this time. Doc. 19 at PageID 107. After consulting with Carmichael, Riddle placed Plaintiff on a six-month sick leave certification. Doc. 21 at PageID

566-67.  The sick leave certification required Plaintiff to "submit a doctor's statement for each period of sick leave and/or leave usage in lieu of sick leave."  Doc. 19 at PageID 272.

On December 5, 2015, Plaintiff submitted paperwork to Laura Coomes, a VA human resources employee, requesting leave under the Family and Medical Leave Act ("FMLA") for knee surgery she was scheduled to undergo in January 2015, a surgery that would require her absence from work until approximately April 2015.[1]  Doc. 19 at PageID 307-12.  Plaintiff admittedly failed to also provide such paperwork to Riddle, however, in violation of VA policy. Doc. 19 at 313-14.  In the days before December 15, 2014, Riddle left Plaintiff a voicemail about the fact that she still had not submitted any FMLA paperwork to him and demanding that she give him those papers immediately.  *See* doc. 19 at PageID 110.  In the voicemail, Riddle did not use foul language or reference Plaintiff's age or EEO activity.  *Id.*  Plaintiff's FMLA leave was subsequently approved on December 16, 2014.  *See* doc. 19 at PageID 313-14.

On December 15, 2014, Plaintiff followed-up with Riddle regarding her request for a reduced workload, and Riddle informed her that he would meet with her in person that afternoon in Springfield.  *Id.* at PageID 270.  When Riddle arrived in Springfield, he knocked on Plaintiff's office door while she was with a patient to let her know he had arrived and that he would be waiting in the lobby.  *Id.* at PageID 117-18.  Riddle met with Plaintiff after her patient session and Riddle wore a cowboy hat during that meeting.  *See id.* at PageID 117-18.  Plaintiff found Riddle's behavior (in interrupting her session with a patient) to be rude, and further found Riddle's wearing of the hat intimidating.  *Id.*

On December 18 and 19, 2014, Riddle left more voicemails for Plaintiff regarding a patient complaint.  Doc. 19 at PageID 115-16.  Riddle sounded upset and requested that Plaintiff call him

---

[1] Plaintiff does not allege any claims related to her FMLA leave other than the allegation set forth *infra* regarding the Defendant's alleged inadequate coverage of her patients during her leave.

immediately. *Id.* Plaintiff attempted to call Riddle a number of times after receiving the voicemails, but was not able to speak directly with Riddle. *Id.* Subsequently, another nurse informed Plaintiff that a patient complained that Plaintiff cancelled an appointment. *Id.* However, it appeared that the patient, and not Plaintiff, had cancelled the appointment and the other nurse informed Plaintiff that there was nothing to worry about. *Id.* Plaintiff never spoke with Riddle about the patient's unfounded complaint, and Plaintiff was never reprimanded nor otherwise suffered any adverse employment action as a result of this incident. *Id.*

Plaintiff ultimately took FMLA leave between January and April 2015. Prior to her leave, Dr. Simran Sehbi, the care line manager for mental health, directed Plaintiff to review the charts of any patients whose appointments were set to be cancelled because of her leave. Dr. Sehbi also advised Plaintiff to renew medications for those patients who were stable, and instruct all other patients to visit the VA walk-in clinic in Dayton to have their medicines renewed. Doc. 19 at PageID 167, 370. While on leave, a number of VA employees provided coverage for Plaintiffs' patients. Doc. 21 at PageID 569-71, 615; doc. 19 at PageID 380. Otherwise, patients whose appointments were cancelled, but who still needed to be seen while Plaintiff was on leave, had two options: they could call the clinic and coverage would be provided, or they could call their primary care physician. Doc. 19 at PageID 170. While Plaintiff was unhappy with the coverage of her patients while she was on leave (doc. 1 at PageID 10), she points no evidence that any patient was denied treatment during that time. Doc. 19 at PageID 166-67.

Plaintiff returned from leave in April 2015, at which time Riddle addressed her previous requests to reduce her workload. *See* doc. 21 at PageID 548-49. In May 2015, Plaintiff filed a second EEO charge with the VA Office of Employment Discrimination Adjudication (hereinafter, the "May 2015 EEOC charge"), *see* doc. 1 at PageID 2, alleging that she was discriminated against on the basis of her age and retaliated against for engaging in prior EEO activity. Doc. 21 at PageID

495.  Plaintiff alleged a number of discrete incidents of alleged discrimination, namely: Riddle's alleged failure to timely address her workload concerns; Riddle placing her on sick leave certification; receiving angry voicemails from Riddle; Riddle interrupting Plaintiff's session with a patient and wearing a large cowboy hat that she found inappropriate for the workplace and intimidating; and the failure of Defendant to satisfactorily cover her patients during her FMLA leave.  *See* doc. 19 at PageID 209.  Riddle contends that he first learned of any of Plaintiff's EEO activity when he was contacted to give testimony during the administrative process in late 2015 or early 2016.  Doc. 20 at PageID 402.

On August 25, 2015, the VA Office of Employment Discrimination issued a final agency decision with regard to Plaintiff's September 2014 EEO charge, concluding that Plaintiff "has failed to establish that she was subjected to discrimination."  Doc. 21 at PageID 415-23.  Plaintiff was then advised of her right to appeal the final agency decision to the Equal Employment Opportunity Commission ("EEOC") within 30 days or, if no EEOC appeal was taken, to file a complaint in federal court within 90 days.  *Id*.  at PageID 422-23.  Plaintiff did not pursue the claims in her September 2014 EEO charge any further and, as she acknowledges, her allegations of discrimination at issue in the September 2014 EEO charge are not at issue in this present lawsuit. Doc. 19 at PageID 158.

In September 2015, Riddle attempted to meet with Plaintiff several times to discuss her annual review.  Doc. 19 at PageID 338-44.  On October 1, 2015, Riddle issued a preliminary review that rated Plaintiff's overall performance as "satisfactory."  Doc. 21 at PageID 571. Plaintiff objected to the rating on the grounds that (1) she was not given the full 90-day notice to provide her own input; (2) the evaluation was not based on a full year of work (since she was on FMLA leave for several months during the review period); and (3) her performance warranted a higher rating.  Doc. 1 at PageID 11; doc. 19 at PageID 123, 348.  Based on Plaintiff's objections,

Riddle withdrew the rating and it was never entered into Plaintiff's personnel file. Doc. 20 at PageID 402. Riddle then gave Plaintiff the opportunity to submit her own performance review, which he intended to incorporate into a new review. Doc. 1 at PageID 11; doc. 20 at PageID 402.

Plaintiff submitted her input to Riddle and her clinical supervisor on November 13, 2015. Doc. 20 at PageID 402. Because Riddle stepped down as a supervisor on November 30, 2015 (and retired shortly thereafter), he had no more involvement in finalizing Plaintiff's review. *Id.* at PageID 402. After Riddle stepped down, Plaintiff's review was updated and completed by others at the VA but, because of some confusion, it was not entered as part of her official personnel file before her retirement. *See* doc. 19 at PageID 163-64, 362-69.

On November 16, 2015, Plaintiff amended her May 2015 EEO charge to allege that Riddle discriminated against her on the basis of her age, and retaliated against her, when rating her performance as satisfactory. Doc. 21 at PageID 425. Plaintiff argues that she "did not have the opportunity to be considered for [a] promotion due to Riddle's low rated proficiency report and/or withdrawn report." Doc. 25 at PageID 739.

Plaintiff ultimately retired from the VA on April 30, 2016. Doc. 19 at PageID 186. Plaintiff never amended her May 2015 EEO charge to allege that her retirement was, effectively, a constructive discharge and never filed a separate EEO charge on that basis. On July 15, 2016, a final agency decision issued by the VA Office of Employment Discrimination Adjudication found that Plaintiff failed to demonstrate actionable claims of age discrimination and retaliation. Doc. 1 at PageID 17. Plaintiff then filed this lawsuit. Doc. 1.

### III.

In her complaint, Plaintiff alleges two claims related to her employment with Defendant: (1) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C.

§ 621, *et seq.*; and (2) retaliation for having complained of alleged discrimination administratively by filing EEO charges. *See* doc. 1 at PageID 4. Defendant moves for summary judgment on both of Plaintiffs' claims. *See* doc. 22. Defendant's arguments will be addressed in turn.

## A. Disparate Treatment on the Basis of Age

Plaintiff acknowledges that she does not have direct evidence of discrimination. Doc. 25 at PageID 735. Absent direct evidence,[2] Plaintiff must prove disparate treatment on the basis of age, *i.e.*, age discrimination, under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under that framework, Plaintiff must first make a *prima facie* showing of age discrimination by proving: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (citation omitted). "[P]laintiff can establish the fourth element by showing that a substantially younger person replaced [her], or by showing that similarly situated, non-protected employees were treated differently than [her]." *Moore v. AMPAC*, 645 F. App'x 495, 498 (6th Cir. 2016) (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521-22 (6th Cir. 2008)).

If "plaintiff succeeds in making out a *prima facie* case of age discrimination, the defendant must 'articulate some legitimate, nondiscriminatory reason' for the [adverse employment action]." *Blizzard*, 698 F.3d at 283. Where a defendant successfully shows a legitimate, nondiscriminatory reason for subjecting plaintiff to an adverse employment action, "the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext." *Id.* (citing *Sutherland*

---

[2] "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (citation omitted). *See also Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) ("a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent").

*v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003)). "While the burden of production shifts throughout this test, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the plaintiff always remains with the plaintiff." *Campbell v. Int'l Paper Co.*, 138 F. App'x 794, 796 (6th Cir. 2005).

Here, Defendant, for purposes of summary judgment, concedes that Plaintiff is a member of a protected group (*i.e.*, age 40 or more at the time in question) and qualified for her position. Doc. 22 at PageID 714. Defendant argues, however, that Plaintiff cannot meet her burden of demonstrating a *prima facie* case because she can neither show an adverse employment action or that a similarly situated person was treated differently. *See id*. at PageID 714-17. Defendant also argues that -- even assuming *arguendo*, Plaintiff can show a *prima facie* case of age discrimination -- it can show a legitimate, non-discriminatory reason for the alleged adverse employment actions and Plaintiff cannot establish that such reasons were a pretext for illegal discrimination. *See id*. at PageID 717-19.

### 1. *Prima Facie* Prong Three: Adverse Employment Action

An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 798 (6th Cir. 2004) (citation omitted); *see also Johnson v. Franklin Farmers Co-op.*, 378 F. App'x 505, 508 (6th Cir. 2010) (applying *White* to ADEA claims). "[D]e minimis employment actions are not materially adverse and, thus, not actionable." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) (citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000)). "The employment action must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Creggett v. Jefferson Cnty. Bd. of Educ.*, 491 F. App'x 561, 565 (6th Cir. 2012) (citation omitted).

Plaintiff's May 2015 EEO charge alleged disparate treatment arising from the sick leave certification requirement and the satisfactory performance review. *See* doc. 1 at PageID 7. In her complaint, Plaintiff asserts she was subjected to adverse employment actions when: (1) her requests for a reduced workload were not met; (2) she was subject to sick leave certification; (3) she received angry voicemail messages from Riddle; (4) Riddle interrupted a patient session while wearing an intimidating and disrespectful cowboy hat; (5) Riddle did not arrange for sufficient coverage of Plaintiff's clients' needs during her medical leave; and (6) her evaluation rating of "satisfactory" was not as favorable as she felt appropriate. *See* doc. 1 at PageID 3. In opposition to Defendant's motion, Plaintiff argues now argues that she suffered an adverse employment action when she: was not promoted on numerous occasions; "did not have the opportunity to be considered for promotion due to [the] low rated proficiency report"; and was denied training opportunities that could have led to her promotion. Doc. 25 at PageID 739. Plaintiff also implies that she was constructively discharged as a result of the totality of Riddle's alleged conduct. *See id*. at PageID 742. The Court will address all of the foregoing.

### a.      Lack of Promotion and Training Opportunities

With regard to Plaintiff's argument relating to a lack of promotion and denial of training, Plaintiff did, as noted *supra*, file an EEO charge alleging the denial of a promotional opportunity in November 2014. *See* doc. 21 at PageID 415. Again, that charge was determined to be unfounded by the VA Office of Employment Discrimination Complaint Adjudication, and Plaintiff took no further action with regard to such charge.[3] *See* doc. 21 at PageID 422. Plaintiff's complaint here arises solely from the subsequent May 2015 EEO charge (as amended on November 16, 2015), doc. 1 at PageID 2, and she specifically testified in this case that the 2014

---

[3] Notably, Plaintiff was advised in that administrative decision of her right to appeal to the Equal Employment Opportunity Commission ("EEOC") within 30 days or to file a civil action in federal court within 90 days. *See* doc. 21 at PageID 422-23.

EEOC charge was not at issue here, doc. 19 at PageID 158. Plaintiff's subsequent May 2015 EEO charge alleged retaliation and discrimination with regard to the aforementioned seven discrete events, not with regard to a failure to promote or denial of training. Doc. 1 at PageID 6-17; doc. 21 at PageID 495.

Even assuming, *arguendo*, that the May 2015 EEO charge could liberally be construed to include failure to promote and denial of training allegations, Plaintiff's complaint in this case makes no mention of either a failure to promote or the denial of any training opportunities. *See* doc. 1 at PageID 2. Thus, even if the Court were to overlook Plaintiff's lack of specific EEO allegations in this regard, "[a] non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion." *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2723 (3d ed. Supp. 2005)). Accordingly, the undersigned does not consider Plaintiff's claims as they relate to an alleged lack of promotion or alleged denial of training opportunities.

### b. Constructive Discharge

In her complaint, Plaintiff alleges that Riddle maintained a "plan to frustrate her and to force her to resign her employment." Doc. 1 at PageID 3-4. To that end, she suggests that Riddle's conduct, in giving her a satisfactory rating on the performance evaluation, was part of that plan. *Id.* Because Plaintiff ultimately retired from the VA, such allegations could potentially be liberally construed to allege a constructive discharge, *i.e.*, a situation where "working conditions are such that a reasonable person in the plaintiff's shoes would feel compelled to resign." *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1127 (6th Cir. 1998). "In the typical discriminatory constructive discharge case, the employer does not overtly seek a discontinuation in the employment relationship but the employee claims to be subjected to intolerable working

conditions due to discriminatory behavior." *Id.*

However, no constructive discharge was asserted in the subject 2015 EEO charge. In fact, Plaintiff's May 2015 EEO charge -- originally filed on May 6, 2015 and later amended on November 16, 2015 (*see* doc. 1 at PageID 6; doc. 21 at PageID 425) -- could not have included a constructive discharge claim because, as noted *supra*, her employment with Defendant did not end until her retirement on April 30, 2016 (doc. 19 at PageID 186), approximately five months after she amended her charge.[4] The record contains no subsequent EEO charge alleging constructive discharge and, therefore, the Court does not consider an alleged constructive discharge here because claims of age discrimination under the ADEA must be exhausted administratively. *See Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998).

### c.    Satisfactory Performance Review

Cases in this Circuit hold that written discipline and negative performance reviews do not amount to adverse employment actions where unaccompanied by a materially adverse change in the terms and conditions of a plaintiff's employment. *See Sanford v. Main St. Baptist Church Manor, Inc.*, 327 F. App'x 587, 597 (6th Cir. 2009); *Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999); *Dowell v. Rubin*, No. 99-4184, 2000 WL 876767, at *2 (6th Cir. June 23, 2000). Here, there is no dispute that Riddle immediately withdrew the review when Plaintiff objected to it; that the rating of "satisfactory" never became part of Plaintiff's employment record; that Riddle gave Plaintiff an opportunity to provide her own input to include in the review; and that, ultimately, Plaintiff received a "high satisfactory" rating. Plaintiff does argue in her memorandum in opposition that Riddle's preliminary "satisfactory" rating resulted in "lost opportunities for

---

[4] It is also notable that Plaintiff's retirement on April 30, 2016 occurred approximately five months after Riddle -- the alleged discriminator and retaliator in this case -- ceased being her supervisor. *See* doc. 20 at PageID 401. Plaintiff alleges no instances of alleged discrimination during those five months prior to her retirement in April 2016.

another review for Nurse III promotion."  Doc. 25 at PageID 733.

Notably, Plaintiff never made such an allegation in her complaint and, other than noting that promotional consideration is triggered by issuance of an employee's performance review, she points to no Rule 56 evidence to support the contention that she would have been denied a promotion if Riddle's "satisfactory" review was actually placed on her record -- or that she would have received a promotion even if rated "highly satisfactory."[5]  *See* doc. 25 at PageID 734.  At most, Plaintiff's ability to be considered for a promotion was delayed as a result of Riddle withdrawing the evaluation, but Plaintiff does not argue that Riddle's withdrawal of the satisfactory rating or the subsequent delay in finalizing the rating was discriminatory in any manner.  *See* doc. 19 at PageID 163.

Accordingly, the satisfactory rating given on Plaintiff's proficiency review -- and immediately withdrawn -- does not amount to an adverse employment action.

### d.      Other Bases Alleged in the Complaint

Notably, in opposition to Defendant's motion, Plaintiff fails to address Defendant's contention that she suffered no adverse employment action for purposes of her disparate treatment claim when (1) her requests for a reduced workload were not addressed; (2) she was placed on sick leave certification; (3) she received angry voicemails; (4) she had a patient session interrupted; and (5) her clients' needs were not addressed while she was on leave.  Doc. 25 at PageID 739-40.  Further, Plaintiff also cites no case law to support a contention that such actions amount to an adverse employment action for purposes of her disparate treatment claims.  *Id.*

Accordingly, the undersigned finds that Plaintiff's contentions in this regard have been

---

[5] Notably, Plaintiff was previously denied a promotion despite being rated "highly satisfactory." *See* doc. 21 at PageID 416.  Plaintiff points to no Rule 56 evidence to show that she otherwise cured any of the alleged deficiencies that caused her previous promotion denial.

abandoned. *See Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011); *Clark v. City of Dublin, Ohio*, 178 F. App'x 522, 524-25 (6th Cir. 2006); *Conner v. Hardee's Food Sys., Inc.*, 65 F. App'x 19, 24 (6th Cir. 2003); *Swann v. Time Warner Entm't Co., L.P.*, 126 F. Supp. 3d 973, 982 (S.D. Ohio 2015). Even assuming, *arguendo*, that Plaintiff addressed these alleged discrete actions by Defendant in her opposition to Defendant's motion for summary judgment, the undersigned would conclude that they do not amount to adverse employment actions.

With regard to Plaintiff's contention that she was overworked, such contention, in and of itself, and without more developed argumentation, is insufficient to demonstrate an adverse employment action. *Cf. Ellis v. Compass Grp. USA, Inc.*, 426 F. App'x 292, 296 (5th Cir. 2011) ("[i]mposing a higher workload than that given to other employees is not an adverse employment action"); *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2007) ("[a]bsent any evidence suggesting that discrimination motivated work distributions, the mere fact that an employee . . . had a heavier workload than her co-workers does not amount to an adverse employment action"); *Grimsley v. Marshalls of MA, Inc.*, 284 F. App'x 604, 609 (11th Cir. 2008) (concluding that being subject to an increased workload did not amount to an adverse employment action). Plaintiff makes no argument to the contrary and cites no authority concluding otherwise.

With regard to placing Plaintiff on sick leave certification, the undersigned finds that such action is not an adverse employment action. *Cf. Cox-Frietch v. Oh. Bureau of Worker's Comp.*, No. 1:10-CV-323-HJW, 2012 WL 508977, at *7 (S.D. Ohio Feb. 15, 2012); *Longstreet v. Ill. Dep't of Corr.*, 276 F.3d 379, 384 (7th Cir. 2002) (holding that "being required to substantiate that [an employee's] absences were illness-related" did not amount to an adverse employment action); *Keach v. Henderson*, 83 F. App'x 859, 860 (9th Cir. 2003) (finding no adverse employment action whether employee was required to provide a doctor's note before using sick leave); *DaCosta v. Birmingham Water Works & Sewer Bd.*, 256 F. App'x 283, 287 (11th Cir.

2007) (finding no adverse employment action where plaintiff was required to produce a doctor's note when taking sick leave).  Plaintiff makes no argument to the contrary and cites no authority finding otherwise.

Further, Riddle's allegedly angry voicemails, supposedly rude behavior in interrupting a client session, or purportedly wearing a cowboy hat in an attempt to intimidate Plaintiff also do not rise to the level of an adverse employment action.  *Cf. Garner v. Cuyahoga Cty. Juvenile Court*, No. 1:02CV1286, 2004 WL 7333361, at *6 (N.D. Ohio Nov. 17, 2004) (holding that a supervisor yelling and threatening an employee was not an adverse employment action sufficient to support a disparate treatment claim); *Minevich v. Spectrum Health-Meier Heart Ctr.*, 1 F. Supp. 3d 790, 808 (W.D. Mich. 2014) ("mere yelling or harsh treatment is not an adverse employment action"); *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997) (holding that yelling at an employee during a meeting was not an adverse employment action); *Amos v. Mobile Cty. Health Dep't*, 460 F. App'x 893, 894 (11th Cir. 2012) (holding that being yelled at and spoken to harshly do not amount to adverse employment actions); *Curry v. SBC Commc'ns, Inc.*, 669 F. Supp. 2d 805, 826 (E.D. Mich. 2009) (finding "undoubtedly rude and inappropriate" behavior insufficient to "rise to the level of an adverse employment action"); *Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 467 (S.D.N.Y. 2013) (finding that standing and staring at someone in an effort to intimidate them is not an adverse employment action).  Again, Plaintiff makes no argument to the contrary and cites authority concluding otherwise.

Finally, Defendant's alleged failure to sufficiently cover her clients during her absence does not amount to an adverse employment action.  In fact, Plaintiff concedes in her memorandum in opposition that "Defendant[] made an effort to cover its bases in relation to Plaintiff's heavy workload" while she was out on FMLA leave . . ."  Doc. 25 at PageID 735.  Plaintiff cites to no evidence to support a contention that Defendant's alleged conduct in this regard resulted in a

significant change in her employment status or impacted her pay or other benefits. Moreover, Plaintiff makes no argument, and cites no authority, to support a contrary conclusion.

### e. Conclusion

Based on the foregoing, the Court finds Plaintiff fails to satisfy her burden of showing the third prong of a *prima facie* case, *i.e.*, that she suffered an adverse employment action.

### 2. *Prima Facie* Prong Four: Treatment Different than those Similarly Situated

As noted previously, Plaintiff can meet her prong four *prima facie* burden "by showing that similarly situated, non-protected employees were treated differently than [her]." *Moore*, 645 F. App'x at 498 (6th Cir. 2016) (citing *Mickey* 516 F.3d at 521-22). Plaintiff, in her memorandum in opposition to Defendant's motion for summary judgment, makes vague references to "younger employees" whom she believes were treated differently (*see* doc. 25 at PageID 731, 732, 739), but only identifies one such person: co-worker Kelly Kazlo, whom Plaintiff argues was "not placed on sick leave certification even though she has had excessive leave due to family concerns." *See id.* at PageID 739.

Kazlo, however, is not a proper comparator in this instance because she, an individual over the age of 40, was, like Plaintiff, a member of the protected class. *Cf. Sperber v. Nicholson*, 342 F. App'x 131, 132 (6th Cir. 2009); *see* doc. 21 at PageID 613 (wherein Kazlo testified that she was born in 1970 and was, thus, over the age of 40 during the time period relevant to this lawsuit, *i.e.*, after September 2014). Accordingly, Plaintiff fails to satisfy her burden of showing a similarly situated employee who was treated differently than her. The Court thus finds that Plaintiff also fails to satisfy the fourth *prima facie* prong.

### 3. Pretext

Because Plaintiff fails to meet her burden of establishing a *prima facie* case of age discrimination, the Court need not consider whether Defendant can show a legitimate, nondiscriminatory reason for its actions, or whether Plaintiff can show that Defendant's proffered reasons were a pretext for age discrimination. Nevertheless, the undersigned notes that Plaintiff does not challenge whether or not Defendant has proffered legitimate, nondiscriminatory reasons for its actions and, in addition, makes no argument as to whether such proffered reasons are pretextual.[6] Accordingly, even assuming, *arguendo*, that Plaintiff could establish a *prima facie* case of age discrimination, her age discrimination claim also fails because she does not argue -- nor present Rule 56 evidence to suggest -- that Defendant's proffered reasons for its actions were pretextual.

### B. Retaliation

In cases where, as here, there is no direct evidence of retaliation, "[i]n order to establish a *prima facie* case of retaliation, the plaintiff must show: (1) that the plaintiff engaged in a protected activity; (2) that the defendant had knowledge of the plaintiff's protected conduct; (3) that the defendant took an adverse employment action towards the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002). Defendant argues that Plaintiff cannot show

---

[6] "To establish pretext, a Plaintiff must show that an employer's stated reason: (1) had no basis in fact; (2) did not actually motivate the challenged conduct; or (3) was insufficient to explain the challenged conduct." *Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 569-70 (6th Cir. 2009) (citation omitted). To meet this burden, a plaintiff must present "'sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him.'" *Id.* (citations omitted). "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515-16 (1993); *see also Simpson*, 359 F. App'x at 570; *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530-31 (6th Cir. 2012) (stating that, to establish pretext, "the employee also must offer some evidence that not only were the employer's reasons false, but that retaliation was the real reason for the adverse action").

the third and fourth elements required of a *prima facie* case of retaliation -- *i.e.*, an adverse employment action and a connection between an adverse employment action and her EEO activity. Doc. 22 at PageID 720-22.

Like disparate treatment claims, if Plaintiff successfully demonstrates a *prima facie* case of retaliation, "[t]he burden then shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for its actions." *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008). If defendant successfully shows a legitimate, nondiscriminatory reason for its employment action, "the plaintiff must then demonstrate by a preponderance of the evidence that the legitimate reason offered by the defendant was not its true reason, but instead was a pretext designed to mask retaliation." *Id*. Here, Defendant also argues that, assuming, *arguendo*, Plaintiff can show a *prima facie* case of retaliation, she nevertheless cannot demonstrate that the proffered legitimate, nondiscriminatory reasons for its actions were a pretext designed to mask retaliation. *See* doc. 22 at PageID 719-20.

With regard to whether or not Plaintiff suffered an adverse employment action, the undersigned notes that "a plaintiff's burden of establishing a materially adverse employment action is less onerous in the retaliation context than in the anti-discrimination [*i.e.*, disparate impact] context." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595-96 (6th Cir. 2007) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-69 (2006)). "A materially adverse employment action in the retaliation context consists of any action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id*. "This more liberal definition permits actions not materially adverse for purposes of an anti-discrimination claim to qualify as such in the retaliation context." *Id*.

Here, the undersigned concludes, similar to the reasoning set forth *supra* concerning Plaintiff's disparate treatment claim, that many of the actions alleged by Plaintiff to be adverse do

not amount to adverse employment actions for purposes of her retaliation claim, even under the less onerous standard under which claims of retaliation are to be considered. The only allegedly adverse employment action that merits further consideration under the "less onerous" standard is Plaintiff's allegation regarding the "satisfactory" rating on her performance evaluation. *See* doc. 25 at PageID 742.

Generally, "lowered performance ratings, standing alone, [do not] constitute a materially adverse change in the terms and conditions of employment." *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999). Thus, a "satisfactory" rating on a performance review, even where lower than previous evaluations, does not amount to an adverse employment action for retaliation purposes absent "evidence to show that the lowered performance ratings actually had an effect on her wages." *Id.*

As noted, the "satisfactory" rating was immediately withdrawn when Plaintiff objected to it and it was never placed on her employment record. There is no evidence that the withdrawn satisfactory rating impacted Plaintiff's wages. Insofar as Plaintiff alleges that the rating possibly impacted her ability to gain a promotion, as also noted above, she points to no Rule 56 evidence to support such contention. *See* doc. 25 at PageID 734. Further, Plaintiff's ability to be considered for a promotion, at most, was delayed as a result of Riddle withdrawing the evaluation. Moreover, Plaintiff does not argue that Riddle's withdrawal of the satisfactory rating or the subsequent delay in finalizing her rating was discriminatory. *See* doc. 19 at PageID 163. Accordingly, the undersigned concludes that the withdrawn "satisfactory" rating by Riddle does not amount to an adverse employment action for purposes of Plaintiff's retaliation claim.

Having found that Plaintiff did not suffer an adverse employment action (the third *prima facie* retaliation prong), the Court need not consider whether or not Plaintiff can demonstrate a connection between an alleged adverse employment action and her protected EEO activity -- *i.e.*,

the fourth prong required to show a *prima facie* case of retaliation. Assuming, *arguendo*, that Plaintiff could, however, demonstrate a *prima facie* case of retaliation, the undersigned notes, again, that Plaintiff does not challenge the proffered legitimate, nondiscriminatory reasons advanced by Defendant for the employment actions at issue and further fails to make as specific argument, with Rule 56 evidence, regarding pretext.

Accordingly, summary judgment is proper with regard to Plaintiff's retaliation claim.

## IV.

Based on all of the foregoing, Defendant's motion for summary judgment (doc. 22) is **GRANTED** in its entirety. Judgment shall issue forthwith in favor of Defendant, and this case is **TERMINATED** on the Court's docket.

**IT IS SO ORDERED.**

Date:   December 17, 2018                                    s/ Michael J. Newman
                                                            Michael J. Newman
                                                            United States Magistrate Judge